UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARLENE CHARLTON,                    )
                                     )
                    Plaintiff,       )        Case No. 1:11-cv-992
                                     )
v.                                   )        Honorable Robert J. Jonker
                                     )
COMMISSIONER OF                      )
SOCIAL SECURITY,                     )
                                     )        **REPORT AND RECOMMENDATION**
                    Defendant.       )
_____)

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security terminating plaintiff's benefits

and denying her subsequent applications for disability insurance benefits (DIB) and supplemental

security income (SSI) benefits.  The ALJ summarized the procedural history of this case as follows:

> In a determination dated October 31, 2002, claimant was found disabled as of March 4, 2002.
> On February 13, 2006, it was determined that claimant was no longer disabled as of February
> 1, 2006.  This determination was upheld upon reconsideration after a disability hearing by
> a state agency Disability Hearing Officer.  Thereafter, claimant timely filed a written request
> for a hearing before an Administrative Law Judge.  I affirmed the prior determination in a
> hearing decision issued March 4, 2009.  My decision was remanded by the Appeals Council
> on December 11, 2009.  Additionally, clamant protectively filed subsequent applications for
> disability insurance benefits and supplemental security income on March 10, 2009
> concurrently with the appeal to the Appeals Council.  The state agency initially denied those
> applications on June 22, 2009, and claimant timely requested hearing on July 2, 2009.
> Although the issues in the remanded case wholly encompass the issues in the subsequent
> applications, the Administration has chosen to proceed with these as two separate cases, and
> I am issuing two separate but identical decisions.

(A.R. 97).  On May 14, 2010, plaintiff received a hearing before an administrative law judge (ALJ),

at which she was represented by counsel.  (A.R. 12-55).  On May 21, 2010, the ALJ issued a decision

finding that plaintiff was not disabled. (A.R. 97-107). On July 21, 2011, the Appeals Council denied review (A.R. 1-4), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. She asks the court to overturn the Commissioner's decision on the following grounds:

1.      The hypothetical question the ALJ posed to vocational expert (VE) did not reflect his factual finding regarding plaintiff's residual functional capacity (RFC);

2.      The ALJ "inconsistently found" that plaintiff's daycare job was substantial gainful activity (SGA) and that it was not;

3.      The ALJ's RFC finding "failed to match" the limitations he found;

4.      The ALJ violated the treating physician rule;

5.      The ALJ "gave no valid reasons" for rejecting plaintiff's reported symptoms and limitations; and

6.      The ALJ "cut off benefits without making the findings required by statute."

(Statement of Errors, Plf. Brief at 2 docket # 11). Alternatively, plaintiff asks the court to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g). (Plf. Brief at 2 n.1, 19-20; Reply Brief at 5, docket # 13). I recommend that plaintiff's request for remand be denied because she has not carried her statutory burden under sentence six of 42 U.S.C. § 405(g). I further recommend that the Commissioner's decision be affirmed.

**<u>Standard of Review</u>**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Sequential Analysis

A.    New Claims for DIB and SSI Benefits

"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

B.    Disability Review Cases

ALJs employ an eight-step sequential analysis applied in disability review cases.  *See* 20 C.F.R. § 404.1594(f).  In step one, the ALJ examines whether the individual is engaging in substantial gainful activity.  If the answer was yes, the individual's disability has ended.  Step two is an examination of whether the individual had an impairment or combination of impairments which meets or equals the severity of a listed impairment.  If the answer was yes, disability continues.  Step

three is an inquiry as to whether there had been medical improvement. Step four is an examination whether the medical improvement is related to the individual's ability to perform work. Step five is an analysis conducted if there has been no medical improvement or the medical improvement is not related to the individual's ability to perform work. Step six is a determination whether the individual's current impairments are severe. If there is no severe impairment, the individual is not disabled. Step seven is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. § 404.1560. That is, the ALJ determines the individual's residual functional capacity based on all her current impairments and considers whether she can perform past relevant work. If she can perform such work, she is not disabled. Step eight is an administrative finding whether the individual can perform other work in light of her age, education, work experience and RFC. If she is capable of performing other work, she is not disabled. 20 C.F.R. §§ 404.1594(f); *see Hagans v. Commissioner*, 694 F.3d 287, 307-08 (3d Cir. 2012); *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008). There is no presumption of continuing disability. *See Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007)(citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994)).

## Discussion

The ALJ found that the administrative decision dated October 31, 2002, was the most recent favorable decision finding that plaintiff was disabled. It was "the 'comparison point decision' or CPD." (A.R. 99). At the time of the CPD, plaintiff had the following severe impairment: "major depressive disorder." (*Id.*). In 2002, her depression was severe enough to meet the requirements of listing 12.04. (*Id.*). Plaintiff had not engaged in substantial gainful activity on or after February 1,

2006, the date her disability ended. (*Id.*). The ALJ found that the medical evidence established that "from the CPD to the cessation date," claimant had the medically determinable impairment of depression. He found that plaintiff's current impairments were depression, low back pain, fibromyalgia, and a left shoulder impairment. (A.R. 100). "Since the CPD," plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.*). The ALJ found that "[m]edical improvement [had] occurred since the CPD." (A.R. 103). The medical improvement was related to plaintiff's ability to work, [and] as of February 1, 2006, [plaintiff's] CPD impairment[] no longer met or medically equaled the same listing[] that [had been] met at the time of the CPD." (*Id.*). Plaintiff continued to have severe impairments on and after February 1, 2006. (*Id.*). The ALJ found that on and after February 1, 2006, plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift up to 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours in an 8-hour workday, and sit for at least 2 hours in an 8-hour workday. She can never climb ropes, ladders or scaffolds; she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; she can only occasionally reach overhead with her left upper extremity and should avoid concentrated exposure to extremes of cold, heat, and humidity. She is limited to performing simple, routine, and repetitive tasks.

(A.R. 104). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 104-06). The ALJ found that on and after February 1, 2006, plaintiff was not disabled because she was capable of performing her past relevant work as a daycare worker, "as she specifically performed it and as generally performed." (A.R. 106-07). Her "disability ended as of February 1, 2006." (*Id.*).

**1.**

Plaintiff argues that this matter should be remanded to the Commissioner under sentence six of section 405(g) for consideration of evidence that she submitted to the Appeals Council. (Plf. Brief at 19-20; Reply Brief at 5). It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision on the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The

court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The statement plaintiff's attorney obtained from Karen Kennedy, M.D. (A.R. 537-48), the progress notes from Dr. Kennedy (A.R. 552-62), and the results of an MRI taken on September 21, 2010 (A.R. 563-66) are new because they were generated months after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

Contrary to plaintiff's assumption, "good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not carried her burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. Plaintiff has not carried her burden. "Plaintiff did not begin treating with Dr. Kennedy until ten months after the ALJ ruled . .

. ." (Plf. Brief at 19). Dr. Kennedy described her role as "coordinating" plaintiff's care. (A.R. 541). Plaintiff informed Dr. Kennedy that she disagreed with the ALJ's decision that she was not disabled. (A.R. 561). On April 28, 2011, Dr. Kennedy gave a sworn statement to plaintiff's attorney in which she offered an opinion that plaintiff was not able to perform sedentary work. (A.R. 544-45). The issues of disability and RFC are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). In addition, the MRI dated September 21, 2010 (A.R. 563-64) did not evaluate plaintiff's condition as of any earlier date. I find that the MRI and the evidence that Dr. Kennedy generated after the ALJ's decision would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled during the period at issue: February 1, 2006, through May 21, 2010.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence-six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ's "hypothetical [question posed to the VE] did not reflect the RFC found by the ALJ." (Plf. Brief 5; *see* Reply Brief at 1-2). On the disability review claim, the ALJ found that plaintiff was not disabled at step 7 of the sequential analysis. He never reached step 8. *See* 20 C.F.R. §§ 404.1594(f)(7), (8). Similarly, on plaintiff's new claims for DIB and SSI benefits, the ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work. He never reached step 5. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v), 416.920(a)(4)(iv), (v). Thus, the ALJ's decision finding that plaintiff was

not disabled was not based on the VE's testimony in response to hypothetical questions. This assertion of alleged error is irrelevant to the ALJ's decision.

It was plaintiff's burden to demonstrate that she was not capable of performing her past relevant work as she actually performed it and as it is generally performed in the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also Simpson v. Commissioner*, 423 F. App'x 882, 884 (11th Cir. 2011). Plaintiff did not carry her burden.

**3.**

Plaintiff argues: "The ALJ inconsistently found that plaintiff's daycare job was SGA, and then that it was not." (Plf. Brief at 6; *see* Reply Brief at 2). This argument is patently meritless. On the present record, the ALJ could have made a finding that plaintiff was not disabled because she was performing work at the substantial gainful activity level during the period she claimed to have been disabled. 20 C.F.R. § 404.1594(f)(1). Plaintiff's statements regarding the income that she earned as a child care provider could not be reconciled with her posted earnings:

> Claimant's earnings record shows she earned self-employment income in the amount of $5,608 in 2006, $6,363 in 2007, and $8,889 in 2008. [] This was from providing child care.
>
> Claimant testified at the first hearing that she receives $25 a day for caring for her niece and nephew before and after school. She further testified that she cares for them five days a week during the school year. But in January 2009, she reported to the Social Security Administration that she earned $50 every month and $720 a year providing this service. Exhibit 10E. She also reported that she watches them three hours before school and three or four hours after school for a combined total of $24. *Id.* These statements cannot be reconciled with her posted earnings.
>
> Prior to that, she was caring for three special-needs foster children until her license was revoked by the State of Michigan for charges of abandonment. The record shows that she adopted three children and has two biological children. Claimant testified that one of the

adopted children was removed from her home and is in foster care. Claimant testified that she was paid by the State for food, clothing, and housing.

She stated in her subsequent applications that she stopped providing child care on December 31, 2008 (Ex B2E). But she omitted any acknowledgment of her history of providing child care for pay on her work history report (Ex B5E). Shortly before the second hearing she reported that she had stopped providing child care in June 2007 (Ex B12E). She testified at the second hearing that she believes she stopped providing child care in 2008.

She had some years of substantial earnings between her established disability date and cessation date unrelated to this case. There have been no earnings reported after 2008. [] But I note that it bears directly on her credibility.

(A.R. 99-100). The ALJ went further into the sequential analysis than was required. He found that plaintiff was not disabled because she was capable of performing her past relevant work.

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); *see Joseph v. Astrue*, 231 F. App'x 327, 331 (5th Cir. 2007). Plaintiff's work as a daycare provider was well within the definition of past relevant work. (A.R. 106). Her daycare earnings in 2004 were in the 15-year time frame and exceeded the substantial gainful activity (SGA) threshold.[1] (A.R. 42-47, 231). *See* 20 C.F.R. §§ 404.1560(b)(1), 404.1594(f)(7), 416.960(b)(1); http://www.socialsecurity.gov/OACT/COLA/sga.html (last visited Sept. 23, 2013); s*ee also Bishop v. Astrue*, Civ. No. 09-266, 2010 WL 2070782, at * 3 (D. Me. May 20, 2010)($810 per month in 2004); *Sims v. Astrue*, No. CA 08-377, 2009 WL 1418368, at * 1 (S.D. Ala. May 20, 2009) (same). The ALJ's factual finding that plaintiff's work as a daycare provider was past relevant work is supported by more than substantial evidence.

---

[1]Although plaintiff's reported daycare earnings in other years fell short of SGA, it is additional evidence that her daycare work lasted long enough for her to "learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.920(b)(1).

**4.**

Plaintiff argues that the "ALJ's RFC failed to match the limitations he found." (Plf. Brief at 7; *see* Reply Brief at 2). She presents the argument in these terms:

> The ALJ found that Plaintiff was "moderately" limited in concentration, pace and persistence (102); yet the only mental limitation contained in his RFC finding (104) and his hypothetical to the VE (53) was that Plaintiff should be limited to "simple, routine, repetitive" work. Doing repetitive work requires a high degree of persistence (if not concentration). Consequently, the ALJ's RFC and hypothetical described a person less limited *than the ALJ found Plaintiff was* when he analyzed the Listings.

(Plf. Brief at 7). Plaintiff's argument is meritless. She conflates the ALJ's factual findings at distinct stages of the sequential analysis, ignores the ALJ's credibility determination, and disregards the more carefully calibrated nature of the ALJ's factual finding regarding her RFC.

The administrative finding whether a claimant meets or equals a listed impairment is made at step 2 of the sequential analysis in a cessation of benefits case and at step 3 on new claims for DIB and SSI benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), .1594(f)(2), 416.920(a)(4)(iii). These steps of the sequential analysis regulate a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). They govern "the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). It is well established that a claimant has the burden of demonstrating

that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 472 (6th Cir. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

On new claims for DIB and SSI benefits, the administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). In a cessation of benefits case, the RFC finding is made at step 7 of the sequential analysis and is applied at steps 7 and 8. 20 C.F.R. §§ 404.1594(f)(7), (8).

The ALJ determined that plaintiff's impairments did not meet or equal the requirements of any listed impairment. (A.R. 100). Plaintiff's impairments "did not fulfill the medical-severity requirements of Listing[s] 12.04, 1.04, or 1.02, affective disorders, spinal disorders, or major joint disorders, respectively." (A.R. 100). The ALJ found that plaintiff had "mild" limitations in activities of daily living, "mild" limitations in social functioning, "moderate" limitations in concentration, persistence, and pace, and no episodes of decompensation of extended duration. (A.R. 102). Thus, plaintiff did not satisfy the Part B severity requirements of the listings and she did not "fulfill the exacting requirements of the 'C' criteria." (*Id.*).

Plaintiff is not challenging the ALJ's finding that she did not meet or equal the requirements of any listed impairment. Rather, she is attempting to take a portion of the ALJ's

finding with regard to the paragraph B criteria out of context and substitute it for the ALJ's factual finding that she retained the RFC for a limited range of light work which involved "simple, routine, and repetitive tasks." (A.R. 104). It is well established that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment." *See Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)). RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id.* at 4; *see Bordeaux v. Commissioner*, No. 3:12-cv-1213, 2013 WL 4773577, at *1 (D. Or. Sept. 4, 2013); *Collier v. Commissioner*, No. 1:11-cv-1144, 2013 WL 4539631, at * 5-6 (W.D. Mich. Aug. 27, 2013); *Reynolds v. Commissioner*, No. 10-110, 2011 WL 3897793, at * 3 (E.D. Mich. Aug. 19, 2011); *Johnson v. Astrue*, No. 3:09-cv-492, 2010 WL 3894098, at * 8 (M.D. Fla. Sept. 30, 2010). The ALJ's findings at earlier steps in the sequential analysis do not undermine his findings that plaintiff retained the RFC "for performing simple, routine, and repetitive tasks." (A.R. 104).

**5.**

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions expressed by Psychologist Jeanette McDowell. (Plf. Brief at 8-12; *see* Reply Brief at 2-3). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3),

416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ carefully considered Psychologist McDowell's opinions and found that the extreme and marked limitations that she suggested were not well supported by objective evidence and were inconsistent with the record as a whole:

> A psychologist, Dr. McDowell, reported that she has been her therapist since 2000. Exhibits 17F, 18F. She asserts that claimant is essentially unable to perform either physical or mental activities. *Id.* She related that claimant was in group therapy at Pine Rest and following

outpatient discharge, had been her client ever since. Exhibit 17F. But I note the brief therapy occurred in *early 2002*. Section F. Importantly, at that time, claimant denied any previous psychiatric history or treatment. *Id.* Furthermore, Dr. McDowell's office records begin in 2008. Exhibit 17F.

In May 2006, a State Agency representative contacted claimant regarding medical evidence. Exhibit 1E. Claimant said she had had recent treatment with Dr. McDowell. It is especially pertinent to note that all records were directly requested from Dr. McDowell beginning with January 2004 and continuing. There was no response to either request as of mid-2006. Reason dictates that counsel would have obtained all records relevant to the adjudicatory period or, at least, provided rationale to explain the omission, prior to issuance of the first hearing decision. Exhibit 9E.

I also note that claimant was evaluated by a consultative psychologist at the request of the Social Security Administration. Exhibit 2F. During the January 2006 evaluation, Dr. Kieliszewski said that claimant did not take psychotropic medication. Importantly, she informed him that she had been involved in counseling "on and off over the years". He reported that claimant was receiving no mental-health treatment. *Id.*

Dr. McDowell's statement that claimant has been a patient since 2000 presupposes some continuity of treatment. Exhibit 17F. Of interest is that on March 26, 2007, claimant had 18 months of therapy following the partial hospitalization (March 2002). Exhibit 12F. She said the case was terminated with an open door policy for her to call and return if she needed any assistance in just maintaining herself. Dr. McDowell further reported on March 26, 2007 that claimant responded to the invitation and was last in her office in March 2006. Exhibit 12F. This could readily explain the gap in treatment records.

After filing the Appeals Council request for review and the new applications additional evidence of care and opinion provided by Dr. McDowell has been added to the record. Claimant presented on January 2009 as very sad with reports of a great deal of pain. (Ex B3F/page 21). Further treatment notes indicate continued discouragement about pain and Dr. McDowell's belief that pain medication would alleviate claimant's sadness. Recommendations were also made to encourage active religious practice and leaving things "in God's hands". As of June 2009 Dr. McDowell was noting claimant's obvious increased discomfort from back and leg pain. Also related in the notes is the effect of seasonal changes, sunlight, and apparent seasonal affective disorder. In October 2009 claimant was anxious about her children. (Ex B15F)[.]

Dr. McDowell authored a letter "to whom it may concern" dated March 24, 2010 (Ex B17F). She noted a ten-year treating relationship, on an as-needed basis, with claimant's family. She noted that high doses of pain medication precluded her medical doctor from prescribing any anti-depressants. She noted claimant's seasonal affective disorder, depression and anxiety, panic attacks, occasional suicidal ideation, and self-isolating behavior. A preponderance of

bad versus good days was noted, and Dr. McDowell opined that claimant cannot be depended on at this time for a working relationship. She offered her opinion of claimant's good character and integrity, and added a belief that claimant's physical pain was incapacitating.

Claimant's attorney obtained a sworn statement from Dr. McDowell on March 24, 2010 (Ex B18F). She reiterated her pre-2008 treating relationship with claimant's children during which she became acquainted with claimant. She again drew a nexus between claimant's physical health and adjustment disorder. She related occasions when claimant was forgetful and [had] a tendency to ruminate. She also noted familial difficulties. She said claimant was a very dependable person. Dr. McDowell also opined that day about claimant's mental functional capacity (Ex B19F). Despite being asked by claimant's attorney to limit her opinion to mental, and not physical health matters, Dr. McDowell specifically related claimant's depression, e.g. "does not find reasons for surviving due to her physical ailments", to her alleged pain. In this assessment Dr. McDowell opined that claimant had marked, or even extreme, limitations in almost [all] areas of functioning, despite her expression of a continuous global assessment of function (GAF) score of 50-55, defined in the DSM-IV as "moderate" symptoms.

Notwithstanding, there is no indication that claimant has experienced "marked" limitation in occupational and performance ratings since 2000. Exhibit 18F. There is also no indication that she has experienced "marked" limitation in three of the "B" criteria since 2005. Dr. McDowell's office records are silent to these and intervening years. Moreover, claimant's daily activities mitigate against these ratings. For the preceding reasons, Dr. McDowell's responses are discounted. Exhibit 17F, 18F, B18[F], B19F. In so determining, I further note that many of her ratings are based upon physical conditions. *Id.* Dr. McDowell, as a psychologist, is not competent to opine on the existence or extent of any alleged physical limitation.

Claimant has no more than mild limitation in activities of daily living as a function of a definitive mental impairment. In March 2003, she denied any history of a mental-health condition or treatment in the context of stress-at-work. Section F. During the adjudicatory period, she was a foster mother for special-needs children, cared for her own children, and babysat two children during the week. Her hygiene was intact and she completed all activities of daily living, including cooking. Exhibit 2F. More recently she reported seeing to her own and children's needs within her physical limits. She cooks, cleans, does laundry, shops, but has no interests as she is preoccupied with pain, which is caused by any and all typical activity. (Ex B4E). Her sister essentially corroborated these assertions (Ex B6E).

Claimant also has mild limitations in maintaining social functioning. Her sister noted she tends to get confused dealing with the public (Ex B6E). As noted elsewhere, and as asserted by claimant, she had a tendency to self-isolate. She has stated that although she enjoys a relationship with her "church family" she doesn't like other people involved in her "business".

Claimant would have moderate limitation in her ability to concentrate, persist at tasks and keep pace. But this appears to be more related to perceived physical problems than to depression.

There is no indication that claimant has experienced episodes of decompensation, each of extended duration. Similarly, she does not fulfill the exacting requirements of the "C" criteria.

The consultative psychologist opined that claimant had mild major depressive disorder and received no treatment. Exhibit 2F. He felt that she had a tendency to exaggerate. I note that she told him she was receiving Social Security benefits for a physical condition. *Id.* The State Agency found no physical impairment at the time of allowance. Section A.

(A.R. 100-02).

Plaintiff argues that the reasons the ALJ gave for discounting Psychologist McDowell's opinion were insufficient because: (A) McDowell's inaccurate statements regarding the duration of her treating physician relationship were immaterial; (B) McDowell did not disclose pre-2008 records because the records were under the names of plaintiff's children and producing them would be violating the confidentiality privilege possessed by the children and enforced by HIPPA; (C) although McDowell's treatment was delivered on an off-and-on basis, "continual" treatment was not required; (D) McDowell's relatively high global assessment of functioning (GAF) score could not be used to "impugn" her opinions that plaintiff had marked or extreme limitations in most areas because GAF scores have "no probative value" to establish functional limitations; (E) the absence of treatment records indicating marked limitations could be explained because such records exist primarily to record symptoms; (F) plaintiff's activities of daily living could be construed as supporting rather than undermining McDowell's opinions; and (G) McDowell's emphasis on plaintiff's pain complaints did not undermine the weight that should have been given to her opinion. (Plf. Brief at 8-11). Plaintiff cites no legal authority in support of arguments (A),

(B), (F) and (G).  Issues raised in a perfunctory manner are deemed waived.  *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

Even assuming that plaintiff did not waive the aforementioned issues, all plaintiff's challenges to the weight the ALJ gave to Psychologist McDowell's opinions are meritless.

A.    Duration of Treating Relationship

It is pellucid that Psychologist McDowell's inaccurate statements regarding the duration of her treating relationship with plaintiff were material.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416. 927(c)(2).  McDowell claimed a duration and continuity of treatment which were not supported by her records.  (A.R. 101).

B.    Absence of Treatment Records Before 2008

The ALJ considered the "supportability" of Psychologist McDowell's opinions as required by 20 C.F.R. §§ 404.1527(c)(3), 419.927(c)(3) and observed that there were no records from McDowell dated before 2008.  (A.R. 100-01).  Plaintiff argues that pre-2008 treatment records were not disclosed because they were under the names of plaintiff's children, and that McDowell "would be violating the confidentiality privilege possessed by the children and enforced by HIPPA to disclose the pre-2008 records."  (Plf. Brief at 9).  This argument is unsupported and unpersuasive. McDowell stated that she worked with plaintiff's children and only "indirectly" with plaintiff from 2006 to 2008.  (A.R. 500).  There is no evidence that Psychologist McDowell withheld *any* documents from the ALJ, whether under unspecified HIPPA provisions alluded to in plaintiff's brief

or any other law.[2]  This court must base its appellate review of the ALJ's decision on the administrative record presented to the ALJ.  *Jones v. Commissioner*, 336 F.3d at 478.

C.    Extent of Treatment

Plaintiff argues that McDowell's treatment of plaintiff was not required to be continual and that it was improper for the ALJ to "impugn [her] credibility" by noting the sporadic nature of McDowell's treatment.  (Plf. Brief at 9).  It is well established that the frequency of examination and the nature and extent of the treatment relationship are appropriate considerations. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

D.    GAF Scores

Plaintiff argues that it was improper for the ALJ to "impugn" the RFC limitations suggested by Psychologist McDowell on the basis of the global assessment of functioning (GAF) score she supplied.  (Plf. Brief at 10).  "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009).  A GAF score is a subjective rather than an objective assessment.  *Id.*  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of

---

[2]The arguments of counsel are not evidence.  *See Camaj v. Holder*, 625 F.3d 988, 992 n.3 (6th Cir. 2010); *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).  Further, assuming that relevant records had been withheld from the ALJ because they were kept under the names of plaintiff's children, the fact that plaintiff did not warrant her own file is evidence that plaintiff's condition was not severe enough to warrant any significant level of treatment.

an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky v. Commissioner*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). It was appropriate for the ALJ to note that the extreme limitations Psychologist McDowell related in her statement to plaintiff's attorney were inconsistent with the subjective GAF score found in her progress notes. *See Gilabert v. Commissioner*, 396 F. App'x 652, 655 (11th Cir. 2010); *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010); *Foreman v. Colvin*, No. 1:12-cv-2120, 2013 WL 3200615, at * 11 (N.D. Ohio June 24, 2013); *Smith v. Colvin*, No. 3:11-cv-651, 2013 WL 1622281, at * 12 (M.D. Tenn. Apr. 15, 2013). I find no error.

E.    No Evidence of Marked Impairments

The ALJ found that there "was no indication that plaintiff ha[d] experienced a marked limitation[3] occupational performance ratings since 2000." (A.R. 101) (citing Exhibit 18F). He found "no indication" that plaintiff had experienced marked limitation in three of the Part B criteria since 2005. He noted that Psychologist McDowell's records were silent as "to these and intervening years." (A.R. 101). Plaintiff argues that "[o]ne would not expect" McDowell's treatment records to indicate marked limitations, since medical records exist primarily to record symptoms, findings and treatment, not to document functional limitations." (Plf. Brief at 10). I find no error. Medical records certainly do document a patient's functional limitations. The point of the ALJ's comment

_____

[3]Marked" is defined as "more than moderate, but less than extreme." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C); *see Stankoski v. Astrue*, No. 12-4227, 2013 WL 4045974, at * 3 n.1 (6th Cir. Aug. 12, 2013); *Leeman v. Commissioner*, 449 F. App'x 496, 497 (6th Cir. 2011). A "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpt. P, App. 12.00(C).

was that the extreme and marked limitations that McDowell later suggested found no support in her contemporaneously recorded office records because those records "beg[an] in 2008." (A.R. 100).

F.      Activities of Daily Living

The ALJ found that plaintiff had "no more than mild" limitation in daily activities stemming from her mental impairment and cited specific evidence supporting his finding. (A.R. 102). He found that plaintiff's daily activities "militated against" the extreme Part B restrictions suggested by Psychologist McDowell. (A.R. 101). Plaintiff cites portions of the administrative record and argues that her daily activities "corroborate" McDowell's opinions. (Plf. Brief at 10). Plaintiff's burden on appeal is much higher than identifying evidence on which the ALJ could have made a factual finding in her favor. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477. The ALJ's finding that plaintiff had no more than a mild limitation in daily activities is supported by more than substantial evidence.

G.      Psychologist Lack of Expertise in Evaluating Physical Impairments

Plaintiff argues that it would "come as a surprise to the psychological profession" that psychologists "are not entitled to take into account physical ailments and pain." (Plf. Brief at 11). The ALJ never asserted that it was improper for Psychologist McDowell to take plaintiff's non-

psychological limitations into account. He observed that as a psychologist, McDowell was "not competent to opine on the existence or extent of any alleged physical limitation." (A.R. 102). The ALJ's decision was entirely consistent with applicable legal standards. *See, e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (The ALJ "did not err" when he disregarded psychologists' opinions that the claimant's physical ailments prevented her from working because it was "indeed beyond their expertise as psychologists."); *Bollinger v. Barnhart*, 178 F. App'x 745, 746 n.1 (9th Cir. 2006) (The ALJ "properly discounted" a psychologist's opinion regarding the claimant's physical limitations because it "was beyond her professional expertise."). I find no violation of any aspect of the treating physician rule.

**6.**

       Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "gave no valid reasons" to reject her reported symptoms and limitations. (Plf. Brief at 12-16; *see* Reply Brief at 3). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an

uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible. (A.R. 104-06). The ALJ noted that there was evidence that plaintiff tended to exaggerate her symptoms. (A.R. 102). It appeared that she "was not forthright with the Social Security Administration concerning her work and earnings." (A.R. 105). Further, it was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**7.**

Plaintiff argues that the ALJ "cut off benefits without making the findings required by the statute." (Plf. Brief at 17-19; Reply Brief at 3-4). She states that the "ALJ never found that

there was *actually* any medical improvement, much less improvement related to ability to work."

(Plf. Brief at 17). This argument cannot withstand scrutiny.

The statutory standard for termination of disability benefits is found in 42 U.S.C. § 423(f):

 (f) Standard of review for termination of disability benefits

A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by--

(1) substantial evidence which demonstrates that--

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity[.]

42 U.S.C. § 423(f)(1); *see* 20 C.F.R. §§ 404.1594(f), 416.994(f). The ALJ recognized the findings that he was required to make regarding "medical improvement" under the statute and related regulations:

At step three, I must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in the severity of the impairment(s) as established by improvements in symptoms, signs and/or laboratory findings (20 CFR 404.1594(b)(1). If the medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step four, I must determine whether medical improvement is related to the ability to work (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)). If it does, then the analysis proceeds to the sixth step.

(A.R. 98).  The ALJ found that "medical improvement occurred" (A.R. 103) and that the "medical improvement [was] related to plaintiff's ability to work." (*Id.*).  Plaintiff's assertion that the ALJ did not make the findings required by statute is untenable.  The ALJ's finding that plaintiff's disability ceased on February 1, 2006, is supported by more than substantial evidence.

### Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's request for a remand to the Commissioner be denied because she has not carried her statutory burden under sentence six of 42 U.S.C. § 405(g).  I further recommend that the Commissioner's decision be affirmed.

Dated:  October 1, 2013             /s/  Joseph G. Scoville
                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).